UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| KELLY RYAN-LOUIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:05-CV-249 PS |
| | ) | |
| FRANK DEFAZIO, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

When Kelly Ryan-Louie decided to drive a couple of drunken patrons home from her bar one night, she probably never figured that she was the one who would end up in jail. But after stopping at a convenience store with her posse in tow, that's just where she found herself charged with disorderly conduct and resisting law enforcement – all the while lending credence to the maxim that no good deed goes unpunished. She contends that her arrest, made by Frank DeFazio of the Crown Point Police Department, was not supported by probable cause and that DeFazio used excessive force to boot. Only the false arrest claim is before the Court on DeFazio's motion for partial summary judgment. But because this case is nothing more than swearing contest, it is not amenable to summary disposition; a jury will have to decide whether Officer DeFazio had probable cause to arrest Ryan-Louie.

### I. BACKGROUND

The key events in this case took place in the early morning of July 17, 2005. Kelly Ryan-Louie, the owner of Kelly O'Lou's Irish Pub and Grill in Crown Point, Indiana, had closed her bar around 3:00 a.m. (Ryan-Louie Dep. at 10, 60.) As was her occasional practice after closing the bar, she offered some of her patrons a ride home to make sure that they made it home safely

after a night of drinking. (*Id*. at 61-62.) One of these patrons was Matt Hovanek. (*Id*. at 60.) Jessica Cadle, who worked for Plaintiff as a bartender, left the bar at about the same time, and may have also taken some patrons in her car. (*Id*. at 60; Cadle Dep. at 7.) At the request of the bar patrons, both Ryan-Louie and Cadle stopped at The Hen, a 24-hour convenience store in Crown Point that serves hot food. (Ryan-Louie Dep. at 63; 3/17/06 Bennett Dep. at 5-6.) That's when the problems began.

Ryan-Louie and her patrons were in The Hen for several minutes ordering and waiting for their food. (Ryan-Louie Dep. at 76-77.) While Ryan-Louie was inside keeping track of her patrons, Hovanek got into an argument with another customer, Jason Sell. (*Id*. at 74; Jones Dep. at 14-16.) The dispute spilled outside (3/17/06 Fassoth Dep. at 11), and some witnesses testified that a crowd gathered around the two men (*Id*. at 14; Ryan-Louie Dep. at 83; DeFazio Aff. at ¶ 5). Brian Jones, an off-duty Lake County police officer who happened to be on the scene, went outside to break up the argument (Jones Dep. at 13-15), and Ryan-Louie went outside with him. (Ryan-Louie Dep. at 77.) Jones stepped between the two men and told them to let it go. (Jones Dep. at 16.) According to both Jones and Ryan-Louie, the altercation was more or less over at this point. (*Id.* at 16-17; Ryan-Louie Dep. at 82.) Ryan-Louie then became concerned with getting Hovanec and her other passengers loaded into the car and on their way. (Ryan-Louie Dep. at 82, 87.)

Within moments of Jones walking outside (witnesses' accounts of the exact timing vary), Officer DeFazio drove by The Hen in his squad car. (DeFazio Aff. at ¶ 3.) Seeing the argument between Hovanek and Sell, he drove around the block and pulled into the parking lot to investigate. (*Id.* at ¶¶ 3-4.) DeFazio says that, upon pulling up to the store, one of the men

involved in the argument walked back into the store, along with a group of people who were outside watching what was going on.  (*Id*. at ¶¶ 5-6.)  Contrary to the testimony of both Jones and Ryan-Louie, DeFazio testified that the two men were still yelling at each other when he pulled up, and that he was concerned for the safety of all present.  (*Id*. at ¶ 7.)  DeFazio then stopped Hovanec, who remained outside, and handcuffed him not with the intent to arrest him, but so that he could control the situation and talk to witnesses to figure out what was going on.  (*Id*. at ¶¶ 7-8; Hovanec Dep. at 23.)

At this point, witness testimony about Ryan-Louie's conduct diverges.  According to DeFazio, Ryan-Louie grabbed his arm and started yelling at him, using profanity.  (Pl.'s Ex. K; DeFazio Aff. at ¶ 8.)  DeFazio testified that he warned her several times to remove her hand from his arm, be quiet, and go inside the store.  (DeFazio Aff. at ¶¶ 10-12.)  According to DeFazio, Ryan-Louie pulled his arm and moved away from him, and yelled, "Fuck you, go ahead and arrest me" – which is exactly what DeFazio did.  (*Id.* at 12-13.)

Ryan-Louie admits that she said words to this effect.  (Ryan-Louie Dep. at 94-95 ("And then I said, 'F you, take me.  No one has done anything wrong. . . . So if you're going to arrest somebody, arrest me.'").)  But she also testified that her tone of voice was just above conversational level, "since there were other people speaking in the background," and that she never screamed at Defendant.  (*Id*. at 95.)  At her deposition, she did not recall whether she touched Defendant as he was placing Hovanek in handcuffs, but was certain that she did not grab him.  (*Id*. at 102-03.)  She also denies pulling away from the officer or making any movement to go back into The Hen.  (*Id*. at 103.)  She states that she was compliant when Officer DeFazio moved to handcuff her.  (*Id*.)

3

Brian Jones, the off-duty officer, testified that Officer DeFazio came out of his squad car yelling that "everybody was going to jail, and they needed to get the hell out of there." (Jones Dep. at 26.) In Jones' opinion, DeFazio did not handle the situation well; he was rude, unprofessional, and unreasonable. (*Id.*. at 17, 32, 37). When Ryan-Louie walked up to DeFazio and tried to explain that she would give Hovanec a ride home, DeFazio told her to "shut the fuck up" or she was going to jail. (*Id*. at 20, 23.) Then a scuffle ensued between the two in the doorway of The Hen as DeFazio tried to arrest her. (*Id*. at 20-22.) Jones never saw Ryan-Louie touch DeFazio. (*Id*. at 22.) He did, however, see Ryan-Louie"pull[ ] away a bit" from DeFazio as he tried to make the arrest, and he acknowledged that "there was some resistance there. She did not want to go to jail." (*Id*. at 34.)

Matt Hovanec testified that he did not hear Ryan-Louie use any profanity, and that there was no time for Ryan-Louie to touch DeFazio before he handcuffed her. (Hovanec Dep. at 28, 42.) Cadle, Ryan-Louie's employee, who was watching these events from inside The Hen, testified that she did not recall Plaintiff using any profanity or yelling at Defendant. (Cadle Dep. at 16-17.) She did not see Plaintiff grab Defendant or pull away from him. (*Id*. at 17.)

Craig Bennett, the cashier at The Hen, testified that DeFazio told Ryan-Louie several times to go back inside when Plaintiff said, "Fuck you." (3/17/06 Bennett Dep. at 24.) According to Bennett, Ryan-Louie was angry and yelling loudly. (*Id*. at 25, 29-30.) Her behavior was disruptive to business, since both employees and customers of The Hen had stopped to watch the scene. (*Id*. at 31.) Bennett testified that Ryan-Louie pushed DeFazio to get away from him, and that she tried to close the door on DeFazio as he was trying to arrest her. (*Id.* at 26; 1/20/05 Bennett Dep. at 11-12.)

4

Christina Fassoth, the other employee of The Hen who was working that night, testified that Officer DeFazio told Plaintiff several times to go inside, and she refused. (3/17/06 Fassoth Dep. at 22.) Instead, she "kept telling him, 'Fuck you,' that she didn't have to listen, that she didn't have to go inside." (*Id*. at 24.) She said that although Ryan-Louie was "yelling and screaming at him" and being disruptive, (1/20/05 Fassoth Dep. at 20; 3/17/06 Fassoth Dep. at 25-26), she never saw her initiate any physical contact with DeFazio (1/20/05 Fassoth Dep. at 22).I

Ryan-Louie alleges that she was left bruised and battered as a result of the incident. According to Cadle, Ryan-Louie had "huge" bruises and "black and blue" marks from the altercation with DeFazio. (Cadle Dep. at 20-21, 28). Six months after the incident, the Lake County Prosecutor dismissed all charges against Ryan-Louie and this case quickly followed.

## II.  DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (internal quotations omitted). A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

"At summary judgment, 'a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" *Paz v. Wauconda Healthcare and Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

Ryan-Louie claims that DeFazio violated 42 U.S.C. § 1983 by allegedly arresting her without probable cause in violation of her federal and state constitutional rights.[1]  To establish a § 1983 claim, Plaintiff must first demonstrate that she has been deprived of a federal constitutional right.  *See, e.g., Ross v. Town of Austin, Ind.*, 343 F.3d 915, 918 (7th Cir. 2003) (citation omitted).  The second step is to show that the constitutional deprivation was caused by someone acting under color of state law.  *Id.*  DeFazio admits that he was acting under the color of state law (Answer at ¶ 5), but denies that he violated Ryan-Louie's constitutional rights because he had probable cause to arrest her.  Alternatively, he argues that he is entitled to qualified immunity.

### A. Probable Cause

Probable cause is a bar to a false arrest claim.  *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996).  Probable cause exists when "the totality of the circumstances, viewed in a common

---

[1] Plaintiff alleges that her arrest violated the Fourth, Fifth, and Fourteenth Amendments and Article 1, § 11 of the Indiana Constitution.  Although Plaintiff refers to the Fifth and Fourteenth Amendments, she seems to concede that Fourth Amendment jurisprudence provides the relevant standards for analyzing her claim.  Additionally, to the extent that Plaintiff's claim relies on the Indiana Constitution, it seems clear that Article I, § 11 of the Indiana Constitution does not give rise to an implied right of action for damages.  *See Cantrell v. Morris*, 849 N.E.2d 488, 500-01 (Ind. 2006). Although *Cantrell* was a case based on the implied right of action under Article I, Section 9 of the Indiana Constitution, the same analysis would seemingly apply under Article I, Section 11.  As a federal court, we are not in the business of creating new implied rights of action under the Indiana Constitution especially when the Indiana Supreme Court has already rejected a similar claim in *Cantrell*.

sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part." *United States v. Sawyer,* 224 F.3d 675, 679 (7th Cir. 2000); *see also United States v. Evans*, 27 F.3d 1219, 1228 (7th Cir. 1994) (citations omitted) ("Probable cause exists if under the totality of circumstances it was reasonable for the officer to believe that a particular individual had committed a crime."). This is an objective test; the officer's subjective reason for making the arrest is irrelevant to the existence of probable cause. *See Whren v. United States*, 517 U.S. 806, 813 (1996). Therefore, "his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Here, Ryan-Louie was charged with disorderly conduct and resisting law enforcement, though DeFazio argues that probable cause also existed to arrest her for battery. We analyze each below.

### 1. Disorderly Conduct

Indiana Code § 35-45-1-3(a)(2) provides that a person commits disorderly conduct when they "recklessly, knowingly, or intentionally . . . make[] unreasonable noise and continue[] to do so after being asked to stop."[2] Indiana courts have held that "the volume of [the arrestee's] speech is critical in determining whether it was unreasonable within the meaning of IC 35-45-1-3." *Johnson v. State*, 719 N.E.2d 445, 448 (Ind. Ct. App. 1999). "[I]n order to support a conviction for disorderly conduct, '[t]he State must prove that a defendant produced decibels

---

[2] Section 35-45-1-3 also criminalizes "engag[ing] in fighting or tumultuous conduct" and "disrupt[ing] a lawful assembly of persons," but Defendant apparently concedes that no probable cause existed to arrest Plaintiff on either of those bases.

7

of sound that were too *loud* for the circumstances.'" *Id.* (quoting *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996)).

What is most startling about the briefing in this case is that both sides gave short shrift to *Morfin v. City of East Chicago*, 349 F.3d 989, 999 (7th Cir. 2003). Each side cited the case once for general propositions of law, despite the fact that this case is a carbon copy of *Morfin*. As is the case here, in *Morfin*, the plaintiff was arrested for violating Indiana's disorderly conduct and resisting law enforcement statutes, and as here, the defendants asserted that qualified immunity barred the plaintiff's claim (more on that in a moment). The *Morfin* court reversed the district court's grant of summary judgment for the defendant. As it related to the disorderly conduct charge, the court stated, "[o]ne has to accept the other [witnesses'] account of the events in order to conclude that [Plaintiff] raised [her] voice and was belligerent. However, such a credibility determination at the summary-judgment stage constitutes error." *Id.* (citing *Payne*, 337 F.3d at 770 and *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987)).[3]

The same could be written for this case. Whether Ryan-Louie was speaking too loudly for the circumstances depends on which version of events one believes. To begin with, it is neither here nor there that Ryan-Louie said "fuck you" to the officer because the use of profanity does not necessarily establish that she was being unreasonably loud. *See Whittington*, 669 N.E.2d at 1367 ("Whether the state thinks the sound conveys a good message, a bad message, or no message at all, the statute imposes the same standard: it prohibits context-inappropriate *volume*."). And while DeFazio and the employees of The Hen testified that Ryan-Louie was

---

[3] Because we find that a genuine issue of fact exists as to whether Plaintiff made unreasonable noise, we need not address Plaintiff's argument that Defendant lacked probable cause to arrest Plaintiff because her speech was protected under Article 1, § 9 of the Indiana Constitution, which prohibits restraints on free speech.

yelling or screaming, she described her own tone as being only a little louder than conversational level.  She attributed the need to raise her voice to the fact that there were other people talking in the parking lot – meaning that she was not being too loud for the circumstances.  Jessica Cadle supports Ryan-Louie's version; she did not recall Plaintiff yelling at the officer.  Most importantly, Jones – the off duty police officer – said that he "never heard her making any unreasonable noise other than saying that she wanted to give [Hovanek] a ride home."  (Jones Dep. at 35.)  These accounts create a question of fact as to whether Ryan-Louie made unreasonable noise and persisted in doing so after being told to stop.  In other words, if Ryan-Louie's witnesses are believed, probable cause did not exist to arrest her for disorderly conduct.

### 2. Resisting Law Enforcement

DeFazio also argues that he had probable cause to arrest Ryan-Louie for resisting law enforcement.  *See* Ind. Code § 35-44-3-3(a)(1).  "Resisting law enforcement" occurs when a person "knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer . . . while the officer is lawfully engaged in the execution of his duties as an officer."  *Id*.  Under Indiana law, the resistance must involve force, which occurs "when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties."  *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993).  Verbal resistance is insufficient.  *Compare Spangler*, 607 N.E.2d at 724-25 (holding that no reasonable trier of fact could conclude that force was used, because "no strength, power, or violence [was] directed at the law enforcement official," and there was "no movement or threatening gesture made in the direction of the official") *with Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997) (plaintiff's "step toward the entrance of the rally, in response to the officers' lawful orders to

9

stay out of the rally if he did not relinquish his tape recorder, constitutes 'force' as that term is understood in the context of interfering with officers' duties").

Issues of material fact prevent summary judgment here as well.  DeFazio testified that Ryan-Louie grabbed his arm and pulled it as she moved away from him.  Jones and Bennett also saw Ryan-Louie pulling or pushing away from the officer as she moved back inside the store.  Plaintiff does not remember if she put her hand on Officer DeFazio's arm, but denies outright using any force.  She testified that she was compliant throughout the arrest.  Meanwhile, multiple witnesses – Hovanec, Cadle, and Fassoth – deny ever seeing Ryan-Louie touch DeFazio.  Thus, taking the facts in the light most favorable to Ryan-Louie, as the Court must do at this stage, DeFazio did not have probable cause to arrest her for forcibly interfering with or resisting the execution of his law enforcement duties.  *See Morfin*, 349 F.3d at 997-99 (issues of fact regarding whether plaintiff resisted law enforcement precluded summary judgment for defendants on false arrest claim).

### 3. **Battery**

DeFazio also argues that probable cause existed to arrest Ryan-Louie for battery.  Battery takes place when a person "knowingly or intentionally touches another person in a rude, insolent, or angry manner."  Ind. Code. § 35-42-2-1(a).  For the same reasons given above, summary judgment must be denied.  Although witnesses agree that Ryan-Louie was upset when she was speaking to DeFazio, several deny that she touched him at all, let alone in a "rude, insolent, or angry manner."  The evidence most favorable to Ryan-Louie supports an account of events in which she did not touch DeFazio.  Therefore, an issue of fact exists about whether DeFazio had probable cause to arrest her for battery.

10

### B.  Qualified Immunity

To determine whether a defendant is entitled to qualified immunity as a matter of law, the Court must first ask whether the facts alleged, taken in the light most favorable to Plaintiff, show that Defendant violated a constitutional right.  *Payne*, 337 F3d at 775 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003) (citations omitted).  The Court must then ask whether the right was clearly established at the time of the alleged injury.  *Payne*, 337 F.3d at 775 (citations omitted).  "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.

In this case, Plaintiff claims that Officer DeFazio lacked probable cause to arrest her, and therefore, the arrest violated her Fourth Amendment rights.  But DeFazio insists that "Plaintiff's unruly behavior and admitted defiance, which included touching Officer DeFazio," gave him arguable probable cause to arrest her.  However, in order to know whether Officer DeFazio could have reasonably believed that he had probable cause to make an arrest, the Court would have to choose one of the competing versions of events.  The Seventh Circuit has noted that it is inappropriate to grant summary judgment on qualified immunity grounds where it requires the court to decide what the facts were when an officer made an arrest:

> The problem with the application of the "arguable probable cause" concept to the present case is that it is not at all clear, at this stage in the litigation, what facts were within [the officer's] knowledge at the time he arrested [plaintiff]. . . . When, as here, the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists.  Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law. . . . Because the facts within [the officer's] knowledge at the time of the arrest are a matter of dispute

11

> between the parties, summary judgment on the basis of "arguable probable cause" [ ] is inappropriate.

*Morfin*, 349 F.3d at 1000 n.13 (citation omitted).

Therefore, just as the Court cannot determine that probable cause existed as to any of the three offenses discussed above, it cannot determine that DeFazio reasonably believed that there was probable cause. Again, disorderly conduct occurs when a person "makes unreasonable noise and continues to do so after being asked to stop." Ind. Code § 35-45-1-3(a)(2). Indiana law is clear that volume, not content, is the relevant metric. *Whittington*, 669 N.E.2d at 1367. Ryan-Louie testified that her volume was only slightly louder than a regular speaking tone, and others say that she was not yelling or being persistently loud. If she did not raise her voice, Defendant had no reasonable basis for believing that probable cause existed. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006) (reversing summary judgment on qualified immunity grounds; where plaintiff testified that he did not raise his voice, use profanity, or make unreasonable noise, no reasonable officer could have concluded that he had probable cause to arrest plaintiff for disorderly conduct in violation of Indiana law).

Likewise, taking the facts in the light most favorable to Ryan-Louie, the Court cannot determine that DeFazio reasonably believed that he had probable cause to arrest her for resisting law enforcement. Plaintiff denied using force against Defendant, and several witnesses deny seeing her touch him at all. Indiana law is clear that a subject who does no more than swear at an officer and invite him to arrest her does not resist law enforcement. *Spangler*, 607 N.E.2d at 722 (reversing conviction for resisting law enforcement where defendant told officer, "if you want to arrest [me] for something go ahead but otherwise I've got a job to do"; although defendant actively resisted officer by walking away, he did not exert any force); *see also Blair v. City of*

12

*Evansville, Ind.*, 361 F. Supp.2d 846, 865 (S.D. Ind. 2005) (denying qualified immunity to officers who arrested protester who engaged in "verbal sparring match" with officer and refused to move, citing *Spangler*).  Moreover, it hardly needs to be said that Indiana law clearly requires a physical touch in order for a battery to occur.  Therefore, the Court cannot grant summary judgment on qualified immunity grounds.

### III.  CONCLUSION

Officer DeFazio's summary judgment motion essentially requires the Court to credit his version of the facts over Plaintiff's.  But only a jury can do that.  For this reason, the motion for partial summary judgment [Docket No. 24] is **DENIED**.

**SO ORDERED**.

ENTERED:  February 2, 2007.

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

13